PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT E. GUTTU, | ) | |
| | ) | CASE NO. 1:19CV2593 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 18] |

An Administrative Law Judge ("ALJ") denied Plaintiff Robert E. Guttu's applications for period of disability ("POD"), disability insurance benefits ("DIB"), and supplemental security income ("SSI") after a hearing in the above-captioned case. That decision became the final determination of the Commissioner of Social Security when the Appeals Council also concluded that Plaintiff was not entitled to benefits, affirming the ALJ's decision.

The claimant sought judicial review of the Commissioner's decision, and the case was automatically referred to Magistrate Judge Jonathan D. Greenberg for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1). On July 2, 2020, the magistrate judge submitted a Report and Recommendation (ECF No. 17) recommending that the Court affirm the Commissioner's decision. Plaintiff filed an Objection to the Report and Recommendation (ECF No. 18), and the Commissioner replied (ECF No. 19), stating that he would stand on the grounds argued in his merits brief (*see* ECF No. 15). For the reasons that

(1:19CV2593)

follow, the Court upholds Plaintiff's objection, remands to the agency for further proceedings consistent with this opinion.

## I. Background

Magistrate Judge Greenberg's Report and Recommendation thoroughly narrates the extensive procedural history, medical evidence, and hearing testimony. ECF No. 17 at PageID #: 1692-1706. It explains that, most recently, after the ALJ concluded for a second time that Plaintiff was not entitled to benefits, the Appeals Council exhibited additional evidence to the record and affirmed the denial of Plaintiff's claims because it found, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), that Plaintiff can still participate in the national economy, and is therefore not disabled. *Id.* at at PageID#: 1708; ECF No. 10 at PageID#: 63-64 (Tr. 6-7). The Court presumes the parties' familiarity with this case's extensive background, and discusses only facts relevant to the narrow issue still before the Court.

Plaintiff raised a number of arguments in his appeal of the agency's decision, but only one is before the Court today: That the ALJ's "failure to mention the treating source opinion of Dr. Rosneck regarding off-task behavior" constitutes reversible error. ECF No. 18 at PageID #: 1726. On April 4, 2018, Dr. Rosneck, an Orthopaedic Surgeon from Cleveland Clinic Sports Health Center, and one of Plaintiff's treating physicians, opined that Plaintiff was "likely to be off-task at least 20% of the time (exclusive of ½ hr. lunch break and two 15 minute breaks)[.]" ECF No. 10 at PageID #: 1184 (Tr. 1127). He explained this restriction was due to pain in Plaintiff's left hip and osteoporosis. *Id.* He opined that this condition had existed since approximately October of 2016. *Id.* The ALJ, in weighing a different opinion of Dr. Rosneck,

2

(1:19CV2593)

describing different limmitations, acknowledged that he was a treating source and an orthopedic specialist. *Id.* at PageID #: 368 (Tr. 311).

Being off-task for 20% or more of the workday is a commonly recognized work-preclusive restriction. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 169 (6th Cir. 2020) (Being off-task for 10% of the day "would be work preclusive."); *Stec v. Comm'r of Soc. Sec.*, 432 F. Supp. 3d 719, 725 (E.D. Mich. 2020) ("[T]he need to be off task more than 10 percent of the workday would be work preclusive[.]"). Indeed, the Vocational Expert who testified in this case confirmed as much: "[B]y 15 percent, most employers will take disciplinary action so that's the number that I use to indicate when employment becomes unsustainable[.]" ECF No. 10 at PageID #: 283 (Tr. 228). Accordingly, were this restriction to be adopted, Plaintiff would be entitled to benefits.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians[.]" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). This is because:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

3

(1:19CV2593)

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).[1]

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Id*. (quoting 20 C.F.R. § 404.1527(d)(2)). "Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406 (quoting 20 C.F.R. § 404.1527(d)(2)). Accordingly, the ALJ was required to give "good reasons" for his treatment of Dr. Rosneck's statement on off-task behavior.

The Commissioner concedes that the ALJ *failed to even discuss* the opinion at issue as required by the regulations, but urged the Magistrate Judge, and now this Court, to find that the ALJ's error was harmless. ECF No. 15 at PageID #: 1679-83.

The Magistrate Judge ultimately concluded "that this is a rare case of the ALJ's analysis meeting the goal of the [treating physician] rule even if not meeting the letter." ECF No. 17 at PageID #: 1722 (citations and quotation marks omitted). Specifically, the Magistrate Judge concluded that the ALJ *indirectly* attacked Dr. Rosneck's opinion though his evaluation of (a) the off-task assessments contained in the opinions of Dr. Weinberger, who is an acceptable medical

---

[1] The Regulations related to the evaluation of medical evidence, including the opinions of treating physicians, were amended effective March 27, 2017. Because Plaintiff's applications were filed in November 2014 and February 2016, the regulations set forth in § 404.1527 and § 416.927 ("Evaluating opinion evidence for claims filed before March 27, 2017") apply.


(1:19CV2593)

source, subject to the treating physician rule, and CNP Cawley, who is not; (b) the medical records as a whole; and (c) Plaintiff's subjective analysis of his own symptoms. *Id.* at PageID #: 1717-1722. Accordingly, the Magistrate Judge concluded that the ALJ's error was harmless.

Plaintiff filed a single objection, in which he specifically challenges each of the three bases the Magistrate Judge advanced in support of his harmless-error conclusion. ECF No. 18. In response, the Commissioner stated that he would rely on his original merits brief. ECF No. 19.

## II. Standard of Review

When a Magistrate Judge submits a report and recommendation, the Court is required to conduct a *de novo* review of the issues dealt with in the portions of the report and recommendation to which an appropriate objection has been made. 28 U.S.C. § 636(b). Objections must be specific, not general, in order to focus the Court's attention upon contentious issues. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's *de novo* review of the ALJ's decision invited by Plaintiff's Objection to the Report and Recommendation is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

5

(1:19CV2593)

adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec. of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (per curiam).

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would decide the matter differently. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam)). Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). This standard "allows considerable latitude to administrative decision makers. . . . An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). In determining, however, whether substantial evidence supports the ALJ's findings in the instant matter, the Court must examine the record as a whole and take into account what fairly detracts from its weight. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

### III. Analysis

As the Magistrate Judge correctly explained, the Sixth Circuit has stated that the failure to mention and consider an opinion of a treating source as grounds for reversal and remand under the treating source rule. *Blakley*, 581 F.3d at 407-08. "Therefore, absent a finding of harmless

(1:19CV2593)

error, this Court must remand." *Richards v. Comm'r of Soc. Sec.*, No. 1:13CV1652, 2014 WL 4421571, at *9 (N.D. Ohio Sept. 8, 2014); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747-50 (6th Cir. 2007).

The Sixth Circuit has allowed courts to conclude that such a violation of the treating physician rule is harmless when, *inter alia*, "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though [he] has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. "An ALJ may accomplish the goals of this procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Richards*, 2014 WL 4421571 at *9 (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010)) (emphasis in original). As the Magistrate Judge acknowledged, it is the "rare case" that will meet this standard. ECF No. 17 at PageID #: 1722 (quoting *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)).

Applying these principles, the Magistrate Judge concluded that the ALJ's failure to discuss Dr. Rosneck's assessment of Plaintiff's off-task behavior to be harmless. Plaintiff advances a single objection to the Report and Recommendation, lodging attacks on each of the three grounds in the R&R supporting the Magistrate Judge's finding of harmless error.

7

(1:19CV2593)

### A. The ALJ's Analysis of Dr. Weinberger and CNP Cawley's Medical Opinions on Off-Task Behavior

In 2016, Dr. Weinberger and CNP Cawley each also opined that Plaintiff would be off-task for at least 20% of the workday.  ECF No. 10 at PageID #: 1033,[2] 1050 (Tr. 976, 993).  The Magistrate Judge concluded that because the ALJ gave good reasons for discounting those opinions, which Plaintiff does not dispute, that most of those reasons would "apply equally" to Dr. Rosneck's opinion applying an identical limitation.  ECF No. 17 at PageID #: 1720.  In the vast majority of Social Security cases, that analysis would have been more than sufficient.  Here, however, Plaintiff's lengthy medical history and numerous potentially disabling conditions renders the analysis deficient.

As the ALJ explained, Dr. Weinberger is a neurologist, and his opinion was rendered on March 16, 2016.  ECF No. 10 at PageID #: 367.  He also explained that CNP Cawley was Plaintiff's primary care provider, and that she rendered her opinion on April 20, 2016.  *Id.* at PageID #: 368.  Both of these opinions state, *inter alia*, that Plaintiff would be off-task 20% or more of the work day, but credited that restriction to specific ailments, and medications associate with those ailments: "1) Peripherial neuropathy[,] 2) Diabetes[,] 3) Coranary heart disease[.]" *Id.* at PageID #: 1033 (Tr. 976); *see also id.* at PageID #: 1050 (Tr. 993) ("Neuralgia/Neoritis LLE").

On the other hand, Dr. Rosneck's opinion was written in April of 2018 and is only retroactive to October of 2016, at least six months after Dr. Weinberger and CNP Cawley's

---

[2] On March 2, 2018, Dr. Weinberger stated that he had reviewed his March 16, 2016 off-task opinion and "reaffirm[ed] that all my responses on the questionnaire(s) still hold true and that no significant improvement has occurred in [Plaintiff's] condition for the above-referenced time period."  ECF No. 10 at PageID #: 1106 (Tr. 1049).

8

(1:19CV2593)

opinions were authored. The opinion specifically explains that the basis for the restriction was Plaintiff's hip pain and osteoporosis, which did not even manifest until 2017. ECF No. 10 at PageID #: 361-62 (Tr. 304-05). Neither the ALJ nor the Magistrate Judge were required to treat the entire period of alleged disability as an inseparable unit. It is possible, and indeed, here seems likely, that Plaintiff became disabled at some point after his alleged onset date due to the development of new conditions and symptoms. The Sixth Circuit "require[s] some indication that the ALJ at least considered [an extensive difference in the dates medical opinions were authored] before giving greater weight to an [earlier] opinion that is not 'based on a review of a complete case record.'" *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.App'x. 580, 585 (6th Cir.2007) and Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3). Here, the difference in the impairments themselves and the difference in time lead the Court to conclude that the ALJ's rejections of the early 2016 opinions of Dr. Weinberger and CNP Cawley cannot simply be transferred to the 2018 opinion of Dr. Rosneck, and therefore do not qualify as "good reasons" for failing to adopt the restrictions detailed therein.

    **B.**    **The ALJ's Analysis of The Medical Evidence as a Whole**

Next, the Magistrate Judge evaluated the ALJ's discussion of the medical evidence as a whole, concluding that it also indirectly attacked Dr. Rosneck's off-task limitation. ECF No. 17 at PageID #: 1720. As the Magistrate Judge explained, the ALJ, after discussing Plaintiff's other impairments, not relevant to this Court's evaluation, stated:

> Recent treatment notes indicate resolution of mechanical symptoms with left hip arthroscopy, and following surgery, the claimant was able to transition from use of a walker to single-prong cane with participation in conservative post-operative treatment, including physical therapy (Exhibit 34F, 38F, 46F). In addition, despite the

9

(1:19CV2593)

>claimant's extensive medical history and numerous severe physical impairments, he has not required frequent emergency treatment or hospitalization (See Exhibit 44F). This evidence suggests that the claimant's impairments, while severe, are manageable with relatively conservative medical care.

*Id.* at PageID #: 1721 (quoting ECF No. 10 at PageID #: 366 (Tr. 309)).

When discussing a separate opinion of Dr. Rosneck, regarding Plaintiff's need for a cane, the Magistrate Judge explained that the ALJ plainly erred in his assessment: "The [Magistrate Judge] agrees with [Plaintiff] that his left hip arthroplasty with labral debridement, chondroplasty, femorplasty, and removal of loose chondral body, as well as being scheduled for a total left hip replacement at his young age, does not constitute 'conservative treatment.'" ECF No. 17 at PageID #: 1716. The Court agrees with this assessment.

While the Magistrate Judge went on to explain that, *as regards cane usage*, there was other objective evidence supporting the RFC determination that Plaintiff only needed the cane while walking, not while standing, ECF No. 17 at PageID #: 1716-17, there is no analogous record evidence concerning Plaintiff's hip pain or off-task tendencies. Indeed, even the Appeals Council concluded that the ALJ improperly excluded certain relevant evidence, including a note that Plaintiff was scheduled for a total left hip replacement. ECF No. 10 at PageID #: 62 (Tr. 5). These misstatements and omissions by the ALJ bear directly on whether Plaintiff's ongoing symptoms, such as hip pain, might cause off-task behavior. The Court cannot agree that the ALJ's inaccurate and incomplete analysis of the medical evidence as a whole represents an adequate indirect attack on Dr. Rosneck's 2018 opinion on off-task behavior, particularly given that the ALJ's errors relate directly to later treatment generally, and, more specifically, the degree of Plaintiff's ongoing treatment for his hip.

(1:19CV2593)

### C. The ALJ's Analysis of Plaintiff's Subjective Assessment of His Symptoms

Finally, the Magistrate Judge concluded that the ALJ indirectly attacked Dr. Rosneck's 2018 off-task opinion while analyzing Plaintiff's activities of daily living. In his discussion on that topic, the ALJ noted that Plaintiff "can no longer hold a fishing rod, requires assistance with hair cutting, does not take out he garbage, and occasionally requires assistance with cooking and bathing his son." ECF No. 10 at PageID #: 365-66 (Tr. 308-09). However, in 2013 he reported doing work in his home and yard, and working at Lowe's in the evenings; and in 2014 and 2015, Plaintiff was able to exercise by walking several miles at a time. *Id.*

The ALJ's description of Plaintiff's abilities do not contradict Dr. Rosneck's off-task assessment for two reasons. First, the Court notes that none of the specific examples discussed by the ALJ post-date Dr. Rosneck's alleged onset date of October 2016. Second, and more importantly, there is nothing in the discussion of daily activities that is probative as to Plaintiff's need for breaks or predisposition to be off-task during an 8-hour workday.[3] There is no suggestion that he was compelled to perform work around his home either full-time or on any set schedule, nor any indication that his walks were regulated by anything other than his desires at the time he took them. Indeed, the ALJ's discussion suggests that what Plaintiff needs assistance

---

[3] In determining what work a claimant can do, the agency must assess "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96–8p, 1996 WL 374184, at *1. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see also* 20 C.F.R. § 404.1520a(c)(2); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016).

(1:19CV2593)

with are tasks that are uniquely ill-suited to stopping once begun, like "hair cutting, ... cooking[,] and bathing his son." ECF No 10 at PageID #: 365 (Tr. 308).

Furthermore, in evaluating a claimant's activities of daily living, the Sixth Circuit has cautioned that proof that a claimant can shop, clean, cook, and provide self-care or childcare do not disprove a physician's opinion that the claimant has disabling function:

> The activities about which claimant testified he participated in, in our opinion— helping his wife with the housework, helping to mop the floor, and wash the dishes, helping her to cook, walking about eight blocks a day to the store, to the filling station, and in his yard, cutting half the grass on their lot with a power mower one day, and half, the next day, driving the automobile twice a week, 74 miles a day, making light wooden chains as a hobby, as a pastime to avoid having nothing to do— none of these activities would constitute gainful employment.

Floyd v. Finch, 441 F.2d 73, 114 (6th Cir. 1971).[4]

It is well-settled that "a claimant need not prove she is bedridden or completely helpless to be found disabled." Hall v. Celebrezze, 314 F.2d 686, 690 (6th Cir.1963); Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (collecting decades of authority across circuit courts of appeal stating exactly the same). To find that the ALJ's error was harmless because of his discussion of Plaintiff's ability to perform basic household tasks would be contrary to binding precedent.

---

[4] *see also* Walston v. Gardner, 381 F.2d 580, 586 (6th Cir.1967) ("The fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of pain suffered by [claimant]."); Melendez v. Comm'r of Soc. Sec. Admin., No. 1:13CV01720, 2014 WL 2921938, at *7 (N.D. Ohio June 27, 2014).

(1:19CV2593)

Dr. Rosneck is a treating physician who stated that Plaintiff had a disabling impairment. The ALJ did not discuss the opinion, let alone give good reasons for disregarding its conclusions. The Court cannot find that the ALJ's error was harmless, and must remand.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's objections to the Report and Recommendation are well-taken.  The Court remands this matter to the agency for further proceedings consistent with this opinion.  The Court notes that, on remand, in addition to expressly evaluating Dr. Rosneck's off-task opinion, the ALJ will need to specifically reevaluate the onset date of Plaintiff's alleged disability, given that Dr. Rosneck's report suggests that sole remaining basis to support a finding of disability did not begin until approximately October of 2016.

    IT IS SO ORDERED.

| | |
|---|---|
| September 30, 2020 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |